CLERK OF DISTRICT COURT
NORTHERN DIST. OF TX
FORT WORTH DIVISION
FILED

2019 OCT -1  AM 8:22

DEPUTY CLERK_____

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTHERN TEXAS

CARLOS ALMEDA,
      Plaintiff,

    -against-

UNITED STATES OF AMERICA;
FEDERAL BUREAU OF PRISONS;
Charles Samuel Jr. Director;
E.V. Wilson, Warden, Forth Worth TX;
Jose Gomez, MLP, Fort Worth, TX;
Known & Unknown Correctional Officers
& Contract Employees et.al., All in
their Official & Individual capacity;
Dallas Jones, Warden, FCI Beaumont, TX;
Dr. Sharig Ahmad, MD FCI Beaumont, TX;
Kolby White, DMP, Baptist Hospital, TX;
Dr. Qureshi, Admitting Physician, Baptist
Hospital, TX; Known & Unknown Correctional
Officers & Contract Employees et.al., All
in their Official & Individual capacity;
Steven Vallis, Warden, FMC Rochester, MN;
Kevin Elker, APRN, CMS, FMC Rochester, MN;
Margaret Paulson, DO, FMC Rochester, MN;
Melissa Macks, RN, FMC Rochester, TX;
Marie Hogan, MD PH.d Mayo Clinic Rochester,
TX; Known & Unknown Correctional Officers &
Contract Employees et.al., All in their
Official & Individual capacity;
M. Underwood, Warden, FCI Seagoville, TX;
J. Capps, MD FCI Seagoville, TX;
Known & Unknown Correctional Officers &
Contract Employees et.al., All in their
Official & Individual capacity;
Captain S. Spaulding, Warden, FMC DEVENS;
Dr. Yeh, MD Medical Director, FMC DEVENS, MA;
Ms. Kildiff, PA FMC DEVENS, MA;
Ms. Toussiant, Medical Director, FMC DEVEND, MA;
Known & Unkown Correctional Officers & Contract
Employees et.al., All in their Official & Individual
capacity.
      Defendants.

CIVIL ACTION No.:

# 4-19CV-783-A

CRUEL & UNUSUAL PUNISHMENT, DELIBERATE INDIFFERENCE, & NEGLECT
OF A SERIOUS MEDICAL CONDITION, IN VIOLATION OF THE 8th AMENDMENT
PURSUANT TO BIVENS v. SIX UNKNOWN NAMED AGENTS OF THE FEDERAL
NARCOTICS, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d U.S.C. Section
2671 et.seq.

JURISDICTION AND VENUE

1. This Civil Action authorized by the BIVENS v. SIX UNKNOWN NAMED AGENTS OF THE FEDERAL BUREAU OF NARCOTICS, 403 U.S. 388 (1971), to redress the deprivation of Rights by Security of the Constitution of the UNITED STATES. This Court has Jurisdiction under 28 U.S.C. Section 1331 & 1334, 42 U.S.C. Section 1983.

2. Plaintiff seeks Nominal, Compensatory, & Punitive Damages in the amount of Ten Million Five Hundred Thousand Dollars, for the Cruel & Unusual Punishment he suffered in connection with Neglect, & Deliberate Indifference to His Serious Medical Condition, Intentionually Injurying, Callous Indifference, which constituted the Cruel & Unusual Punishment under the 8th Amendment of the UNITED STATES CONSTITUTION.

3. The UNITED STATES District Court for the District of N. Texas is the appropriate Venue under 28 U.S.C. 1391(b)(2), because it is where the events giving rise to the Claim's occurrence continues to take place.

4. Plaintiff Carlos Almeda II, was at all times mentioned herein unless otherwise "NOTED," an inmate at the Federal Medical Center Devens, Fort Woth TX, Federal Medical Center, Federal Correctional Institution Beaumont TX, Federal Medical Center Rochester, MN, Federal Bureau of Prisons Detention Center Seagoville TX, Pursuant to the Custody of the Federal Bureau of Prisons. Plaintiff is currently confined at Federal Medical Center Devens, in Ayer, Massachusetts.

5. Defendant E.V. Wilson, was the Warden of FMC Fort Worth, TX. at the time of the claims alleged herein. E.V. Wilson, was legally responsible for the operations of FMC Fort Worth TX., and for the

2

welfare of all the inmate population of the Prison.

6. Defendant Jose Gomez, MLP Clinical Staffer, is a Medical Federal Employee of the Federal Bureau of Prisons, who at all time mentioned in this Complaint, held the position of Physician Assistant or Nurse, who was assigned to the Federal Medical Center Fort Worth, TX.

7. Defendants known & unknown & contract employees et.al, who at all times mentioned in this Complaint, held the positions Contract Employees or Staffers, who were assigned to Fort Worth, TX.

8. Defendants known & unknown Correctional Officers of the FBOP, who held the ranks of correctional officers, at all times mentioned in this Complaint, were employed at FMC Fort Worth, TX.

9. Each Defendant is sued individually in his or her Individual and Official capacities, at all time mentioned in this Complaint, each defendant acted under the color of Federal Law.

10. Defendant Dallas Jones, was the Warden of FCI Beaumont, TX, at all times of the claims alleged herein. Dallas Jones was legally responsible for the operations of FCI Beaumont, TX, and for the welfare of all the inmates of that prison.

11. Defendant Kolby White, DPM, was an Attending Physician at Baptist Hospital, TX., contracted by the Federal Bureau of Prisons to treat its Inmate Population, who at all times mentioned in this Complaint was employed at Baptist Hospital, TX., and held the position of Attending Physician or Nurse who was assigned to Plaintiff while employed at Baptist Hospital, a Contract Facility of the federal Bureau of Prisons.

12.   Defendant DR. Qureshi, Admitting Physician at Baptist Hospital
Texas, who at all times mentioned in this Complaint held the
position of Admitting Physician or Doctor, who was assigned to
Baptist Hospital a Contract Facility of the Bureau of Prisons.

13.   Each individual is sued individually in his or her individual
and official capacities, at all times mentioned in this Complaint
each defendant acted under the color of Federal Law.

14.   Defendant Steven Vallis, was the Warden of Federal Medical
Center Rochester, MN., at the time of the claims alleged herein.
Steven Vallis, was legally responsible for the operation of FMC
Rochester, MN., and for the welfare of all the inmate population
of the Prison.

15.   Defendant Kevin Elker, APRN, CWS, was a Medical Staffer
at the Federal Medical Center Rochester, MN., who at all times
mentioned in this Complaint held the position of Physician Assistant
or Nurse, who was assigned to FMC Rochester, MN.

16.   Defendant Doctor Margaret Paulson, DO., Federal Medical
Center Rochester, MN., who at all times mentioned in this Complaint
held the position of Doctor, who was assigned to FMC Rochester,MN.

17.   Defendant Melissa Macks, RN., Federal Medical Center Rochester,
MN., who at all times mentioned in this Complaint held the position
of Nurse, who was assigned to FMC Rochester, MN.

18.   Defendant Doctor Marie Hogan, MD PH.d NEPH, Mayo Clinic,
Rochester, MN., who at all times mentioned in this Complaint
held the position of Doctor, who was assigned to the Mayo Clinic,
as a Contract Facility to treat the Federal Bureau of Prisons'
inmate population in Rochester, MN.

4

19.   Defendants Known & Unknown Correctional Officers of Federal Medical Center Rochester, MN., who at all times mentioned in this Complaint held the ranks of Federal Correctional Officers who at all times mentioned in this Complaint were assigned to FMC Rochester, MN.

20.   Defendants Known & Unknown Contract Employees of the Federal Medical Center Rochester, MN., who at all times mentioned in this Complaint were assigned to FMC Rochester, MN., who at all times mentioned in this Complaint held the position of Contract Employees, at the Federal Medical Center Rochester, MN.

21.   Each Defendant is sued individually in his or her individual & official capacities, at all times mentioned in this Complaint, each individual acted under the color of Federal Law.

22.   Defendant M. Underwood, was the Warden of Federal Detention Center Seagoville, TX., at the time of the claims alleged herein. M. Underwood was legally responsible for the operation of FCI Seagoville, TX., and for the welfare of all the inmate population of the Detention Center/Prison.

23.   Defendant J. Capps, MD, Federal Detention Center Seagoville, TX., is a Medical Staffer of the Federal Bureau of Prisons, who at all times mentioned in this Complaint held the position of Medical Director, who was assigned to the Federal Detention Center Seagoville, TX.

24.   Defendant Known & Unknown Correctional Officers for the Federal Detention Center Seagoville, TX., who at all times mentioned in this Complaint held the ranks of Federal Correctional Officers, who at all times mentioned in this Complaint were employed at FCI Seagoville, TX.

## STATEMENT OF CLAIM

1.  Plaintiff's first Claim for Relief for the Cruel & Unusual
Punishment he suffered by the Deliberate Indifference of His
Serious Medical Condition by the Federal Bureau of Prisons' Staff
& Others yet Known & Unknown are as follows:

| | |
|---|---|
| Nominal Damages in the amounts of | $20,000 dollars |
| Compensatory Damages in the amount of | $6,280,599 dollars |
| Punitive Damages in the amount of | $3,300,000 dollars |

2.  Plaintiff's first Claim for Relief for the Callous Indifference
of Charles Samuel Jr., Director of the Federal Bureau of Prisons
and Others yet Known & Unknown are as follows:

| | |
|---|---|
| Nominal Damages in the amount of | $500 dollars |
| Compensatory Damages in the amount of | $10,000 dollars |
| Punitive Damage in the amount of | $7,000,000 dollars |

3.  Plaintiff's first Claim of Relief for being Legally Responsible
for the welfare of Plaintiff by Warden E.V. Wilson are as
follows:

| | |
|---|---|
| Nominal Damages in the amount of | $500 dollars |
| Compensatory Damages in the amount of | $15,000 dollars |
| Punitive Damages in the amount of | $7,000,000 dollars |

4.  Plaintiff's first Claim for Relief for the Callous Indiffernce
by Jose Gomez, MLP and Others yet unknown are as follows:

| | |
|---|---|
| Nominal Damages in the amount of | $100 dollars |
| Compensatory Damages in the amount of | $10,000 dollars |
| Punitive Damages in the amount of | $7,000 dollars |

5.   Plaintiff's first Claim for Relief for being legally respon-
sible for the welfare of Plaintiff by Warden Dallas Jones, are as
follows:

    Nominal Damages in the amount of        $500 dollars

    Compensatory Damages in the amount of   $10,000 dollars

    Punitive Damages in the amount of      $7,000 dollars

6.   Plaintiff's first Claim for Relief for the Callous & Deliberate
Indifference by Doctor Sharig Ahmad, MD & Others yet Unknown are
as follows:

    Nominal Damages in the Amount of       $500 dollars

    Compensatory Damages in the amount of   $10,000 dollars

    Punitive Damages in the amount of      $7,000 dollars

7.   Plaintiff's first Claim for Relief for the Callous & Deliberate
Indifference by Medical Physician Kolby White are as follows:

    Nominal Damages in the amount of       $200 dollars

    Compensatory Damages int the amount of  $5,000 dollars

    Punitive Damages in the amount of      $6,000 dollars

8.   Plaintiff's first Claim for Relief for the Callous & Deliberate
Indifference by Doctor Qureshi are as follows:

    Nominal Damages in the amount of       $500 dollars

    Compensatory Damages in the amount of   $10,000 dollars

    Punitive Damages in the amount of      $7,000 dollars

9.   Plaintiff's first Claim for relief for being legally respon-
sible for the welfare of Plaintiff by Warden Steven Vallis are
as follows:

    Nominal Damages in the amount of       $500 dollars

    Compensatory Damages in the amount of   $10,000 dollars

    Punitive Damages in the amount of      $7,000 dollars

10.  Plaintiff's first Claim for Relief for the Callous & deliberate Indifference by Medical Physician Kevin Elker are as follows:

    Nominal Damages in the amount of        $100 dollars

    Compensatory Damages in the amount of  $3,000 dollars

    Punitive damages in the amount of      $4,000 dollars

11.  Plaintiff's first Claim for Relief for the Callous & Deliberate Indifference by Medical Physician Margaret Paulson are as follows:

    Nominal Damages in the amount of        $100 dollars

    Compensatory Damages in the amount of  $3,000 dollars

    Punitive Damages in the amount of      $4,000 dollars

12.  Plaintiff's first Claim for Relief for the Callous & Deliberate Indifference by Melissa Mack are as follows:

    Nominal Damages in the amount of        $100 dollars

    Compensatory Damages in the amount of  $3,000 dollars

    Punitive Damages in the amount of      $4,000 dollars

13.  Plaintiff's first Claim for Relief for the Callour & Deliberate Indifference by Medical Physician Marie Hogan are as follows:

    Nominal Damages in the amount of        $500 dollars

    Compensatory Damages in the amount of  $10,000 dollars

    Punitive Damages in the amount of      $7,000 dollars

14.  Plaintiff's first Claim for Relief for being legally respon-sible for the welfare of Plaintiff by Warden M. Underwood are as follows:

    Nominal Damages in the amount of        $500 dollars

    Compensatory Damages in the amount of  $10,000 dollars

    Punitive Damages in the amount of      $7,000 dollars

15.   Plaintiff's first Claim for Relief for the Callous & Deliberate
Indifference by Medical Physician J. Capps are as follows:

    Nominal Damages in the amount of        $100 dollars

    Compensatory Damages in the amount of  $3,000 dollars

    Punitive Damages in the amount of     $4,000 dollars

16.   Plaintiff's first Claim for Relief for being leggally respon-
sible for the welfare of Plaintiff by Captain S. Spaulding, Warden
are as follows:

    Nominal Damages in the amount of        $500 dollars

    Compensatory Damages in the amount of  $10,000 dollars

    Punitive Damages in the amount of     $7,000 dollars

17.   Plaintiff' first Claim for Relief for the Callous & Deliberate
Indifference by Medical Director Yeh are as follows:

    Nominal Damages in the amount of        $100 dollars

    Compensatory Damages in the amount of  $15,000 dollars

    Punitive Damages in the amount of     $7,000 dollars

18.   Plaintiff's first Claim for relief for the Callous & Deliberate
Indifference by Medical Physician Kildiff are as follows:

    Nominal Damages in the amount of        $1 dollar

    Compensatory Damages in the amount of  $1,000 dollars

    Punitive Damages in the amount of     $500 dollars

19.   Plaintiff's first Claim for relief for the Callous & Deliberate
Indifference by Medical Physician Ms Toussiant are as follows:

    Nominal Damages in the amount of        $500 dollars

    Compensatory Damages in the amount of  $5,000 dollars

    Punitive Damages in the amount of     $4,000 dollars

25.  Defendants Known & Unknown Contract Employee at Federal
Detention Center Saegoville, TX., who at all times mentioned
in this Complaint were employed at the Federal Detention Center
Seagoville, TX., Held the positions of Contract Employees of
Staffers, who were assigned at FCI Seagoville, TX.

26.  Each Defendant is sued individually in his or her individual
& official capacities, who at all times mentioned in this Complaint,
each individual acted under the color of Federal Law.

27.  Defendant Captain S. Spaulding, was the Wared of the Federal
Medical Center Devens, MA., at all times of the claims alleged
herein. Captain S. Spaulding, was legally responsible for the
operations of FMC Devens, MA., and for the welfare of all the
inmate population of that Prison.

28.  Defendant Yeh, MD, Federal Medical Center Devens, MA., was
a Medical Director or Staffer at the Federal Medical Center Devens,
MAS, who at all times mentioned in this Complaint held the position
of Medical Director, who was assigned to FMC Devens, MA.

29.  Defendant Ms Kildiff is a Medical Assistant or Staffer at
the Federal Medical Center Devens, MA., who at all times mentioned
in this Complaint held the position of Physician's Assistant,
who was assigned to Plaintiff's case, at FMC Devens, MA.

30.  Defendant Ms Toussiant, is a Medical Doctor or Staffer at
the Federal Medical Center Devens, MA., who at all times mentioned
in this Complaint held the position of Medical Doctor or Staffer,
who was assigned to FMC Devens, MA.

31.  Defendants Known & Unknown Correctional Officers & Contract
Employees of the Federal Bureau of Prisons FMC Devens, MA., who
at all times mentioned in this Complaint, were employed and/or

contracted to FMC Devens, MA., and held the ranks of Correctional
Officers & Contract Employees of the Federal Bureau of Prisons,
assigned to FMC Devens MA.

32.  Each Defendant is sued individually in his or her individual
& official capacities, who at all times mentioned in this Complaint,
each individual acted under the color of Federal Law.


PREVIOUS LAW SUITS


RECEIVED : June 26, 2017

Administrative Claim TRT-NCR-2017-05510

Certified Number 7016 0910 0000 2694 5833

Denied December 20, 2017



EXHAUSTION OF ADMINISTRATIVE REMEDIES


All Four Stages of the Administrative Remedy Procedures were
Exhausted on October 23, 2017

## STATEMENT OF FACTS

This is a Statement of Facts surrounding the Personal Injury Claim of Carlos Almeda, II: hereafter referred to as Plaintiff, who has suffered severely at the hand of the Medical Professional & Contract Professionals charged with his Care, in which Plaintiff is an Federal Inmate, held in the Custody of the Federal Bureau of Prisons.

In order to fully understand the Claim of Cruel & Unusaual Punishment & Personal Injury, it is necessary to a Historical approach in reviewing the details surrounding these Claims. The Plaintiff has suffered needlessly by the hands of those charged with his care time after time, in which the Plaintiff realized that something is seriuosly wrong with how he is being treated for the medical condition that he has/had, and decided that the time had come to seek Justice.

Plaintiff entered into the Federal Bureau of Prisons approximately June 3, 2010, and was designated to the Federal Medical Center in Fort Worth, Texas. Plaintiff had multiple foot deformities upon arrival to Fort Worth and was prescribed Special Orthotic Shoes by Linda Hemingway, Physical Therapist. Plaintiff was treated for problems with hie left foot throughtout 2010, while house at the Fort Worth Facility.

On or about January 12, 2011, Plaintiff was transferred from the General Population Unit in Fort Worth to the Segregated Housing Unit (SHU) pending New Criminal Charges. While housed in the SHU Plaintiff's Medical Care was thoroughly NEGLECTED.

A chanced Clinical encounter by Jose Gomez, MLP, on or about
February 15, 2011, reflected that Plaintiff was performing "SELF
WOUND CARE" [see: Exhibit 1]
At the Clinical encounter with Jose Gomez, MLP, Plaintiff asked
for "WOUND CARE" supplies that were so desperately needed. It was
during this time period that a PLANTAR ULCER had developed in his
right foot.

On or about April of 2013, Plaintiff was transferred to Federal
Correctional Institution Beaumont Texas, a Care Level II Facility.
Plaintiff had been transferred after being accued of serious charges.
Plaintiff, along with other inmates, were targeted by a group of
CONFIDENTIAL  INFORMATES who were aggressively engineering crimes
in order to gain favor with thier Jailers, in which there were other
inmates targeted and Plaintiff was asked to testify on their behalf.

Plaintiff argues that the transfer from FMC Fort Worth to FCI
Beaumont was, in retaliatory and vindictive to the alleged charges.
The transfer and confinement in the Special Housing Unit contributed
to the extent of his current injuries. Plaintiff's specail orthotic
shies became too tight, as a result of the ectensive wounds in both
of his feet. The Staff at Beau mont gave the Plaintiff regular
tennis shoes and told him to remove the inserts from his orthotic
shoes and put them in the tennis shoes, and as a result Plaintiff's
foot injuries worsen until a development of OSTEMYLITIS in his
right foot occurred. Plaintiff was then given a wheelchair and two
Offloading Shoes by Off-Site Medical Professional, however, Plaintiff
remained housed on the THIRD TIER of his housing unit and was forced
to walk most places on the Compound as it was not Wheelchair accessi-
ble.

Which only worsened his condiction, in which repeated request for medical attention went unanswered and treatment was withheld. It is later realized that Pllaintiff had advanced, <u>GANGRENOUS</u> infection and he was transferred to the Emergency Department at Baptist Hospital in Beaumont Texas, on July 16, 2013.

The infection was so far advanced that the fifth(5) llittlle toe on Pllaintiff's rifght foot had to be <u>AMPUTED</u> and it has been noted that he has <u>CELLULITIS</u> up to the thigh with streaking. The consultation notes fron Attending Physician, Kolby White, DPM, dated July 17, 2013, states "There is a large Ulceration to the Plantar Aspect of the right fifth(5) Metatarsal Head with surrounding bluish discoloration as well as Serosanquinous drainage with this... there is surrounding cellilitus with ascending cellulltis to the level of the high. There is streaking along the high The list of Problems contained disturbing information that was not shared with the Pllaintiff in a narrative dated August 23, 2013, by Dr. Sharig Ahmad MD, who states "He has been receiving LEVOFLOXACIN and VANCOMYCIN for the infection in the lower extremities with culture results consistent E coli and Enterococcus... [r]enal failure, which I presume is going to turn out to be Chronic Kidney disease, Stage III. The lower extremity is likelly from Proteinuria and Nephrosis." Sadly Dr. Ahmad is the only Physician to even order VANCOMYCIN in his plan of that same narrative.

That very same day, Dr. Kolby White, DPM, from Baptist Hospital assesses Pllaintiff and narrates, "I had a long discussion with the patient today concerning treatment options. He will need a partial fifth(5) ray amputation with application of wound VAC later today... [h]e is at risk for much higher llevel ampution

due to the infection type, and he is made aware of this. We
will need to continue the IV antibiotics including VANCOMYCIN and
ZOSYN until culture results."

An aggressive course of antibiotics was administered while
Plaintiff was hospitalized. Dr. Qureshi, the admitting Physician
noted "Necrotic Cellulitis of the Right Lower Extremities."
Upon admission a renal consult is ordered for ellevated creatinine
llevels of 1.9. There has been no past renal disease noted. The
Physician notes that Pllaintiff has diabetes that is not well
controlled. Later, Plaintiff is started on a course of Vancomycin
and Levaquin for E. Coli. He remained hospitalized unitl September
25, 2013, and transferred to the federal Medical Center in Rochester,
MN. Upon his arrival to FMC Rochester, Plaintiff was assessed for
Osteomylitis of his right foot, by Kevin Elker, APRN, CWS. In
November of 2013, Mr. Elker had his foot tested for Gangrene, and
the test results were Positive.

Plaintiff was housed in Building 9-3rd Floor since his arrival
to FMC Rochester. This was an In-Patient hospital setting with
24-hour Nursing care and In-House Physicians assigned to each Unit.
Plaintiff's Care Level was assigned at Care Level FOUR.

In December of 2013, Plaintiff was transferred again on a
Writ to testify for an Inmate that had been targeted by the same
group of Confidential Informants as he had been. The transfer was
to Seagoville, a Federal Detention Center in Dallas, Texas.

Plaintiff was essentially removed from the hospital setting
and placed in an invironment with virtually no On-Site Medical
Care.

15

Let be noted that Plaintiff was a High-Risk Patient with Deep
Vein Thrombosis (DVT/Blood Clot) and Pulmonary Embolism (PE).
Upon arrival to Seagoville on December 4th, 2013, Plaintiff com-
plained of severe pain to his right foot and leg as well as short-
ness of breath. The limited Medical Care available at Seagoville
led to the Plaintiff's request for medical attention that went
unheard until December 23, 2013, when he was transported to the
Emergency Department of Doctors Hospital in White Rock Lake, where
he was diagnosed with Right Leg Cellulitis, initially, but was
found to have a DVT in the Distal right superficial femoral Vein.

Plaintiff was started on an IV Antibiotic and transferred to
Vibra Specialty Hospital in DeSoto, TX, for continued IV Antibiotic
Therapy. Again it is of great significants to note that Plaintiff
was taken from a Care Level Four, Hospital environment to an Insti-
tution without any skilled medical care on a Writ as a witness.
In which there has remained a Provision for Video or Telephone Con-
ference Appearances of a Participant in a Court Proceeding. FMC
Rochester has/had all of the necessary equipment and Inmates have
consistently appeared before the Court without being transferred.

By Tranferring the Plaintiff to Seagoville, his life was need-
lessly put in JEOPARDY, in Violation of his Eight Amendment Right
against Cruel and Unusual Punishment.

In a Clinical encounter by Dr. Capps, MD at Seagoville in
Vibra LTach Facility Report, which stated "[Patient] remains on
IV Antibiotics and is recovering    ATN (Acute Renal Failure) re-
lated to Vancomycin (antibiotic required for tx of infection) and
is in recovery from Acute Pulmonary Edema.

Is to be further assessed in one week as to level of recovery
and level of care likely needed." Prior to his discharge from Vibra
Specialty Hospital, Plaintiff was not provided with an IVC filter
even though they knew or should have known that he would be flown
back to FMC Rochester upon satisfying the Court appearances. They
knew or should have known of the presence of the Pulmonary Embol-
ism and still took no measures to ensure the Plaintiff's stable
transfer back to Minnesota. Yet, again Plaintiff was needlessly
placed in harms was as it is well established that long periods
of sitting while flying can result in DVT and Pulmonary Embolism.

Plaintiff was returned to FMC Rochester, in Febraury of 2014,
where he was started on IV Ceftriaxone and Cipro, in addition to
Oral Bactrim for concerns for the Right Leg Cellulitis. A Clinical
encounter with P.A. Lee Witter dated April 16, 2014, states that
Plaintiff was started on these medications for Left Leg Cellulitis.
This is but a small example of the neglent and inaccurate medical
record keeping on the part of the Bureau of Prisons. Where is this
Civil Action there will be a multitude of inaccuracies and incomplete
records that can be produced upon Production of Documents at Dis-
covery.

Plaintiff was hospitalized on March of 2014, for ACUTE KIDNEY
INJURY. It was during this time that Plaintiff discoveres that his
kidney injury was at Stage Four and that the cause of the injury
is most likely due to the Aggressive course of Antibiotics that
he had been subjected to over a prolonged period of time.

Plaintiff started to listen to the comments and coversations
of his Providers outside of the Bureau of Prisons environment.
It was through this practice that Plaintiff learned that the FBOP
has been negligent in monitoring Plaintiff's medical care and that
a constant monitoring of the Plaintiff's kidney function and crea-
tinine levels would have indicated a deficient Renal function.

April 25, 2014, Plaintiff was once again hospitalized at Mayo
Clinic as a result of neglect to right foot osteomyelitis. The
infection to the fourth toe of the right foot is extreme and it
is determined that the toe needs to be amputated. [One might ask
the Question,"How can an Inmate who is a Patient in a Hospital Unit
at a Federal Medical Center have an infection that progresses to
the point where that digit must be amputated?] Now, depending on
who answers the Question, will determine the response and Culpa-
bility of the Federal Bureau of Prisons' and Staff that were charged
with the Plaintiff's care. In the Surgical Report of Dr. Kitaoka,
MD at Mayo Clinic, dated April 25, 2014, it reads "Fourth Ray re-
section...a roughly racquet-shaped incision was made extending along
the fourth matatarsal distally, extending over the fourth toe and
plantarward in such a way as to excise the infectied ulcer...some
additional necrotic tissue was removed from the region of the fourth
metatrsal head...wound type: Type IV - Dirty or Infected."
Plaintiff is once again faced with the loss of a digit. The psy-
chological stree began to become extremely apparent.

In a Renal Pathology Report from Mayo Clinic dated May 21,
2014, it is clearly stated that "Nephritis may be secondary to
a Hypersensitivity reaction to drugs such as NSAIDS, Antibiotics,
etc.

Between May of 2014, and June of 2015, Plaintiff was monitored by his appointed Physician through Chronic Care visits. On June 29, 2015, Plaintiff was hospitalized after complaining of Chest pain and Shortness of Breath. In a Clinical encounter authored by Melissa Marks, RN, on the day of admission, she states, "there was no PE (Pulmonary Embolism) noted." In anothe Clinical encounter, again authored by Melissa Marks, dated the next day (June 30, 2015,), she states "Lung scan was indictive of Multifocal PE some of which may be recanalizing. Ultrasound of lower extremities was negative for DVT." This shows that there was a PE and the records dated the day prior were inaccurate. In the final Clinic encounter, dated July 1, 2015, Melissa Marks, RN stated "...was seen by Nephrology and they have given diagnosis of Acute Renal failure, most likely due to worsening right sided Heart failure from PE." This statement is a far reach when one considers that the Pulmonary Embolism wasn't present until long after the renal failure diagnosis was rendered. Furthermore, records reflect that te renal failure is most likely caused by the aggressive antibiotis therapy that Plaintiff received for injuries stemming from the Neglect, Cruel and Unusual Punishment, Malpratice, Breach of Duty in the Deliverance of a Medical Standard of Care, and Deliberate Indifference to the Serious Medical Condition of Plaintiff.

Now during this time Plaintiff began to hear murmuring about the possibility that a Kidney Transplant may be necessary. Upon hearing this, Plaintiff realized the extent of his injury....

...and the culpability of the Federal Bureau of Prisons. It became painfully clear that the Plaintiff needed to look to Legal Remedies as his injuries are far reaching and will require years of contiued medical care and may even result in premature death.

Plaintiff was eventually discharged from St. Mary's Hosptital and returned to the hospital unt at FMC Rochester, where he remained for monitoring and treatment.

January of 2016, Plaintiff began to experience Chest pain and Acute Dyspnea. The Plaintiff was retaining close to sventy(70) pounds of water and could not breath. Upon adimission, he is referred to the Nephrology department. It is of record that FMC Rochester was not in agreement with the hospital and requested that it verified whether or not the Plaintiff truly needs to be seen by Dr. Hogan in Nephrology. What does this questionong truly achieve? One could argue that this is FMC Rochesters standard operating procedure for letting a provider know that they don't really want the course of care to continue in the direction it is going. The medical records reflect this line of questioning TWICE. A Clinical encounter dated January 11, 2016, by Susan Ellinghuysen, RN (and the current utilization review Nurse) reads "Nurse was advised that patient is currently scheduled with Dr. Hogan, Nephrology for tomorrow, and FMC has requested confirmation as to whether or not appointment is needed"

In a Report dated Fedruary 23, 2016, from Mayo Clinic, electronically signed by Dr. M.C Hogan, she states, "At this point, with a GFR of 22, he may be eligible for a kidney transplant evaluation...once I hear back from our tarnsplant colleagues, we will

...decide on whether to go ahead with a permanent vascular place-
ment toward preparations for long-term dialysis. I will discuss
further with Dr. Slater at Prison Medical Services."

In Summary, the Plaintiff has gone from entering the FBOP
system in a relatively healthy state, only requiring Orthitic Shoes,
for multiple foot deformities. He arrived at an FMC that could have
and should have cared for his medical needs but, instead after be-
ing placed in the SHU where his medical needs were ignored he de-
veloped foot ulcers, then transferred to FCI Beaumont, Texas, where
his medical needs where ignored further and an infection became so
sevre (bad) that he had wounds permeated with Gangren Infections
that were described by the Emergency Room Doctors a "DIRTY." The
medical staff at FCI Beaumont were completely negligent and breached
their DUTY in deliviering a Standard of Care that is reasonably
expected.  To make matters worse, Plaintiff faced having a digit
amputed and had sevre cellulitis that was extending to his high.
Plaintiff was transferred to FMC Rochester, where he started to
get the care he needed when he was suddenly transferred from a
hospital setting with acute care services to an FDC where he suffered
for weeks with wounds to his feet, complaining of untreated pain
and shirtness of breath. When his medical condition became emer-
gent, he was finally brought to a hospital where it was  discovered
that he had further infection, pulmonary embolism, and renal failure.
Plaintiff should had never been transferred from FMC Rochester.
The Writ for which he was transferred  could have and should have
been dealt with via Video Conferencing or Telephone Court.

This was done on a regular basis at FMC Rochester. When the Plaintiff was finished with matters in Seagoville he returned to FMC Rochester, where he soon suffered the loss of another toe and learned he had a Pulmonary Embolism and Stage IV Kidney failure. Which was due to the aggressive course of IV and Oral Antibiotics, that he was repeatedly prescribed. Because of the failure of medical staff to closely monitor his kidney function, Plaintiff has now faced kidney transplantation and/or long-term Dialysis.

The consequence of the Sub-Standard Medical Treatment, he has suffered is Irreptable for the Plaintiff. He was sentenced to a determinate term of imprisonment, in which he now faces an Injury that has caused him to suffer from Cruel & Unusual Punishment by the hand of those that were sworn to Protect him during the term of his sentence. While in prison, an inmate is entitled to reasonable Medical Services comparable to those he could receive if he were not in prison. This was not the case here. The Plaintiff's Eighth Amendment Rights to be free fron Cruel & Unusual Punishment were violated. He is the victim of Deliberate Indifference to a Serious Medical Condition from the Federal Bureau of Prisons' Medical Statf and Breaches of the Duty of the Wardens & Staff which who's care he was place under for the duration of his sentence. On or about February 18, 2018, Plaontiff was bending down to put compression stocking, then stood up felt dizzy and passed out.

On or about February 18, 2018, Plaintiff was seen by Clinical Staff and was given 0.4 mg of NARCAN IV, in which a responsiveness of 5 minutes was reported by Nursing Staff.

On or about February 18, 2018, at 1857, Plaintiff arrived
at Nashoba Valley Medical Center, Steward Health Care, 200 Groton
Road Ayer, MA 01432, and was seen by Stedman, George MD, stating
he responded to Narcan which makes an opiate overdose more lokely
His Tox Screen did not show any opioids...

On or about February 20, 2018, upon returning to FMC Devens,
Plaintiff was seen by Pereira, E. NP-C, stating "Per custody,
pt will be transferred to the SHU pending Urine Toxicoloy Screen,
He was instructed to drink to thirst and no less than a quarter
a day, to apply compression stocking and elevate legs for edema,
and to follow-up with his regulàr provider in the Clinic . BMP
and CBC were drawn.

Plaintiff was locked down in a Mental Health Unit for obser-
vation after a fainting/syncope episode....and administration
of Narcan both resulting in an emergency trip to the local hospital
for further evaluation.

Plaintiff was given Narcan before his medical records had
been reviewed placing him in a high risk situstion for death,
and or other severe injuries caused by the injection of Narcan.

This neglegent act by medical staffers at FMC Devens added
to the many medical issues already suffered by the hands of neglegent
staffers at other FBOP institutions, which seems to by a regular
accurance with inmates in the Federal Bureau of Prisons, and
their Detention Facilities.

PRAY FOR RELIEF


Plaintiff Carlos Almeda II, seeks Nominal, Compensatory, & Punitive Damages in the amount of Ten Million Five Hundred Thousand Dollars, for the Cruel & Unusual Punishment he suffered in connection with the Ngelect, & Deliberate Indifferenec to His serious Medical Condition.

The Federal Bureau of Prisons is directly responsilbe for the Care & lack of Care received by Plaintiff and should be held accountable for their actions.

I Carlos Almeda II, Prays that this Honorble Court Grants His request for Relief in the amount stated above or what the Court to deem True & Just as it pertains to the situation.




Respectably Requested

Carlos Almeda II

Name: ALMEDA, Carlos Jr.                                        Reg. No. 36700-180

This is in response to your Inmate Request to Staff dated August 1, 2011, wherein you allege the Special Investigative Agent (SIA) is not responding to your requests.   You state you have been in the Special Housing Unit (SHU) for eight months without receiving an Incident Report.   You state you do not have a detainer and there has been no change to your case.   Lastly, you state being held in SHU constitutes cruel and unusual punishment.

As you are aware, you are under investigation by an outside agency, and we are not at liberty to discuss this case with you due to pending prosecution.   You are currently housed in SHU pending investigation and will remain in your current status until your case is dismissed or adjudicated.   It should be noted Bureau of Prisons' policy does not preclude the placement of inmates in Administrative Detention for extended periods in the interest of safety, security, and the orderly operation of the institution.

I trust this addresses your concerns.

_____                          _____
Rebecca Tamez, Warden                               Date





AW(0)
Capt

**INMATE REQUEST TO STAFF** CDFRM

BP-A0148
JUNE 10

**U.S. DEPARTMENT OF JUSTICE**          **FEDERAL BUREAU OF PRISONS**

8-10-11

| TO: (Name and Title of Staff Member) | DATE: 8/01/2011 |
|---|---|
| Warden Ms. Taminez | |
| FROM: Carlos Almeda, Jr. | REGISTER NO.: 36700-180 |
| WORK ASSIGNMENT: n/n | UNIT: Special House Unit #08-B |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.

Ms. With all Respect. I have Constantly Written SIA MR. Serrano And yet to Receive A Response. That is, I have been housed in the SHU Nearing eight months without A Misconduct. My Reason for being held in the SHU involves An inmate wearing a body wire and Recording our conversation Regarding An Alleged Solicitation to comit Murder. However, no charge, nor detainer has been Lodged Against me. To me, this constitutes cruel and unsual Punishment. Pursuant to the program statement specifically, 6013. Detainer Actions, b. Lodging, Requirements Detainers, if the BOP's CC: inmate File Reason for housing me in the SHU in behind the Above Surreptitious Recording, and being that FCI-FWT Is A Low FACILITY, then the State of Texas Should have sent the Correctional Systems Department Review (CSD) A Certified Warrant And Cover Letter. See page. 2 →

(Do not write below this line)

DISPOSITION:

_____

| Signature Staff Member | Date |
|---|---|
| | |

Record Copy - File; Copy - Inmate

PDF                    Prescribed by P5511

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

FILE IN SECTION 6 UNLESS APPROPRIATE FOR PRIVACY FOLDER          **SECTION 6**

PAGE. 1

## INMATE REQUEST TO STAFF CDFRM

BP-A0148
JUNE 10

U.S. DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member) | DATE: 8/01/2011 |
|---|---|
| Warden Ms; Taminez | |
| FROM: Carlos Almeda, Jr. | REGISTER NO.: 36700-180 |
| WORK ASSIGNMENT: n/n | UNIT: Special House unit #08-B |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.

[IDAL], necessary, For CSD to Lodge A detainer there by Implicating the
Interstate Agreement on Detainers Act [IAD] where As "I could File For
Final Disposition" in the above matter. However, Texas has file to do so, yet,
the BOP has and/continues to keep me Unconstitutionally, And ARbitrarily
housed in the SHU. In Fact, the IAD was enacted to prevent circumstances
exactly Like mine. Please Respond back As soon As possible. Thank you And
May God Bless you to the fulness always.

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|
| | |

Record Copy - File; Copy - Inmate

PDF                          Prescribed by P5511

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94


Page 2

Almeda, Carlos (# 36700-180)

| Notes |
| --- |

Physician: Butch Tubera, MD
Diagnosis: D/M with complication
Device Type: bilateral diabetic shoes
Reason for Visit: Initial Evaluation

Height: 6'1"
Weight: 250 lbs

History: Carlos Almeda Jr. has a history of diabetes mellitus and PVD. He has been a diabetic for 19 years and is currently on oral medication to treat his diabetes. Mr. Almeda has had six surgeries to his left foot, the last one occurring in June of 2007. These surgeries are result of charcot occurring in his left foot. His physician has ordered diabetic shoes and protective inserts to help protect and accommodate his foot deformity.

Evaluation: Mr. Almeda's feet were inspected and he presents with peripheral neuropathy with evidence of callus formation and a plantar ulcer under the second metatarsal head of the left foot. He has good range of motion in both feet. Muscle strength is weak on the left foot and good on the right side. He has calluses forming on the metatarsal heads of both feet. His left foot has some lateral instability due to the charcot in the foot. Mr. Almeda would benefit from custom accommodative orthotics that would help to keep his feet in proper alignment. They would also help to protect his insensate foot. Mr. Almeda is currently being treated under a comprehensive plan of care for his diabetes and is need of protective diabetic shoes.

Service: Mr. Almeda Jr. was evaluated for custom-fit diabetic shoes and accommodative inserts. The importance of wearing well fitting shoes and daily feet inspections was discussed in detail with the patient. Appropriate shoe options were discussed with the patient. Mr. Almeda Jr.'s feet were measured for the fitting of extra depth diabetic shoes. Impressions were taken of his feet, bilaterally, for the fabrication of accommodative diabetic inserts. Extra depth diabetic shoes are designed with additional room inside to allow the placement of custom molded, protective inserts. Diabetic shoes also are available in a wide range of widths and have tall toe boxes to minimize the risk of rubbing and skin breakdown. Custom molded, accommodative inserts are medically necessary to evenly distribute pressures across the plantar surface for prevention and reduction of excessive pressure areas, that lead to ulcerations in a non-sensate foot.

Plan: Size 10-2E shoes, style #11380 will be ordered for Carlos. Once the shoes are in the office and the inserts are complete, the patient will come in for fitting. Any additional shoe modifications that may be needed will be made after initial fitting.

Next Appt: Mr. Almeda Jr. will return to the office once the shoes and inserts are ready for delivery.

NOTICE OF CONFIDENTIALITY: This document contains unconditionally private medical records. Any improper use of the information contained herein constitutes a breach of patient medical confidentiality.

Michael Serrano, LO, C. Ped

Dr. C. Eilert, D.O.
Medical Officer

11-17-10
vt



**Baker Orthotics and Prosthetics**

810 Lipscomb Street   Tel: (817) 332-7313
Fort Worth, TX 76104   Fax: (817) 335-3504

# Patient Notes

| Patient Information | | |
|---|---|---|
| Patient Name (Last, First, MI) Almeda Jr., Carlos  3 C 700 - 180 | Patient ID 7787 | Patient DOB 02/24/1967 |
| Device Type Bilateral Diabetic Shoes | Visit Type Delivery / Definitive Fitting | Visit Date 1/26/2011 |

| Notes |
|---|
| Physician: Butch Tubera, MD<br>Diagnosis: D/M with ulcer<br>Device Type: bilateral diabetic shoes<br>Reason for Visit: Delivery / Definitive Fitting<br><br>History: Carlos Almeda Jr. was last seen on November 10, 2010 for initial evaluation for his diabetic shoes and inserts. The shoes were ordered and inserts fabricated and are now ready for fitting and delivery.<br><br>Service: Mr. Almeda Jr. came into the office today for final fitting and delivery of his diabetic shoes and inserts. The diabetic shoes and accommodative inserts were donned to the patient's feet. Shoe fit was assessed and is appropriate. Mr. Almeda Jr. ambulated for several minutes in the office, while wearing the new shoes . He reports being comfortable at this time. The importance of always wearing appropriate socks with the new shoes was discussed. Mr. Almeda Jr. was instructed to check his feet daily for signs of redness or rubbing that does no dissipate within 15-20 minutes. Mr. Almeda Jr. was asked to contact the office immediately if irritation occurs inside the shoes. Mr. Alemeda, Jr. was fit with style #888 shoe in size 10D, because they had a longer lasting sole.<br><br>Plan: The ED diabetic shoes and custom inserts are to be worn anytime the patient is up walking and are medically necessary to evenly distribute pressures across the plantar surface for prevention of excessive pressure areas, that lead to ulcerations in a non-sensate foot.<br><br>Next Appt: Mr. Almeda Jr. will return to the office PRN. |

NOTICE OF CONFIDENTIALITY: This document contains unconditionally private medical records. Any improper use of the information contained herein constitutes a breach of patient medical confidentiality.

Michael Serrano, LO, C. Ped

Date Received: _____

# 36700·180



**Baker Orthotics and Prosthetics**

810 Lipscomb Street      Tel: (817) 332-7313
Fort Worth, TX 76104     Fax: (817) 335-3604

## Patient Notes

| Patient Information | | |
|---|---|---|
| Patient Name (Last, First, MI)<br>**Almeda Jr., Carlos** | Patient ID<br>**7767** | Patient DOB<br>**02/24/1967** |
| Device Type<br>**Bilateral Diabetic Shoes** | Visit Type<br>**Initial Evaluation** | Visit Date<br>**11/10/2010** |

Dr. C. Eilert, D.O.
Medical Officer

11-76-10

# Bureau of Prisons
# Health Services
# Clinical Encounter

| | | | |
|---|---|---|---|
| Inmate Name: | ALMEDA, CARLOS JR | | Reg #: 36700-180 |
| Date of Birth: | 02/24/1967 | Sex: M  Race: WHITE | Facility: RCH |
| Encounter Date: | 02/11/2016 15:30 | Provider: Mead, Jeffrey RN | Unit: C02 |

Nursing - Medical Trip Return encounter performed at Health Services.

**SUBJECTIVE:**

**COMPLAINT 1**     Provider: Mead, Jeffrey RN

Chief Complaint: NEPHROLOGY

Subjective: Inmate returned from consult with nephrology. Dr. Hogan requested that Dr. Slater email inmate's current medications and is also requesting that inmate receive 2 pairs of compression shorts for his edema  and right sided heart failure. Dr. Hogan also would like Dr. Slater to consider for the inmate cardiac rehab or return to see Dr. Hogan and increase inmate's exercise routine.

Pain: No

**OBJECTIVE:**

**Temperature:**

| Date | Time | Fahrenheit | Celsius | Location | Provider |
|---|---|---|---|---|---|
| 02/11/2016 | 15:30 RCH | 96.6 | 35.9 | Oral | Mead, Jeffrey RN |

**Pulse:**

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 02/11/2016 | 15:30 RCH | 61 | Via Machine | | Mead, Jeffrey RN |

**Respirations:**

| Date | Time | Rate Per Minute | Provider |
|---|---|---|---|
| 02/11/2016 | 15:30 RCH | 16 | Mead, Jeffrey RN |

**Blood Pressure:**

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|---|---|---|---|---|---|---|
| 02/11/2016 | 15:30 RCH | 127/74 | Right Arm | Sitting | Adult-large | Mead, Jeffrey RN |

**ASSESSMENT:**

No Significant Findings/No Apparent Distress

**PLAN:**

**Disposition:**

To be Evaluated by Provider

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 02/11/2016 | Counseling | Treatment Goals | Mead, Jeffrey | Verbalizes Understanding |

# Bureau of Prisons
# Health Services
# Clinical Encounter - Administrative Note

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | ALMEDA, CARLOS JR | | | Reg #: | 36700-180 |
| Date of Birth: | 02/24/1967 | Sex: | M    Race: WHITE | Facility: | RCH |
| Note Date: | 07/01/2015 10:32 | Provider: | Marks, Melissa RN | Unit: | OUT |

Admin Note - Community Hospital Report encounter performed at Other.
**Administrative Notes:**

**ADMINISTRATIVE NOTE   1**          **Provider:** Marks, Melissa RN

COMMUNITY HOSPITAL ADMIN NOTE
FMC ROCHESTER, MN
DIAGNOSIS: Chest Pain
ADMIT DATE: 6/28/2015
CONTACTED: Chris, RN at local hospital
HOSPITAL:  SMH, Francis 5-127, Thoracic Surgery, 255-4715
Condition: Stable

Per Mayo Notes: Was seen by Nephrology and they have given diagnosis of acute renal failure most likely
due to worsening right sided heart failure from PE.

| | 7/1 | 6/30 | 6/29 | 6/28 |
|---|---|---|---|---|
| Hemoglobin | 7.7 | 7.6 | 6.7 | 7.8 |
| Creatinine | 3.1 | 3.1 | 2.8 | 2.1 |
| BUN | | 55 | 46 | 41 | 37 |
| Bicarb | 16 | 17 | 15 | 14 |
| APPT | | 70 sec | 41 sec | ------------ |

Nurse reports that patient is doing well. She states that he is voiding large amounts- at 0300 voided almost a
full liter and again at 0800 almost a full liter. She states that he complains of some discomfort of wound on
back and does not want anything for it. He is receiving clindamycin 150 mg four times a day. She states that
they are bridging him from heparin 14units/kg/hour to oral anticoagulants (Coumadin). She is thinking that he
will return to the institution on Friday, July 3, 2015.

PLAN: Possible return Friday, July 3, 2015.   PCPT informed

**Copay Required:** No          **Cosign Required:**  Yes
**Telephone/Verbal Order:**   No

Completed by Marks, Melissa RN on 07/01/2015 10:34
Requested to be cosigned by  Jordan, Nancy DO.
Cosign documentation will be displayed on the following page.
Requested to be reviewed by  Hadaway, Sheila D.O./CD.
Review documentation will be displayed on the following page.

# Bureau of Prisons
# Health Services
# Clinical Encounter - Administrative Note

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | ALMEDA, CARLOS JR | | | Reg #: | 36700-180 |
| Date of Birth: | 02/24/1967 | Sex: | M    Race: WHITE | Facility: | RCH |
| Note Date: | 01/11/2016 13:17 | Provider: | Ellinghuysen, Susan RN, | Unit: | OUT |

Admin Note - Community Hospital Report encounter performed at Other.
**Administrative Notes:**

   **ADMINISTRATIVE NOTE   1**        **Provider:** Ellinghuysen, Susan RN,QM

   COMMUNITY HOSPITAL ADMIN NOTE
   FMC ROCHESTER, MN
   DIAGNOSIS: CHF exacerbation/Acute Kidney Injury
   ADMIT DATE: 1/3/2016
   CONTACTED: Roger Erickson, NP at local hospital
   HOSPITAL: St. Mary's, Domitilla 4-266, Med/Cardiac ICU, 255-537
   Condition: Stable

   Nurse Practitioner R. Erickson returned call to writer regarding Nephrology appointment currently scheduled
   for tomorrow with Dr. Hogan. NP states appointment can be cancelled for 1/12/2016 and rescheduled to date
   after 1/25/2016. NP states that Nephrology has signed off on patient at this time and that he should not
   required follow-up prior to the 25th. Mayo Liaison at FMC notified and rescheduled appointment to February
   11-2016 with Dr. Hogan.

   PLAN: Discharge back to FMC today at approximately 1400. PCPT informed


**Copay Required:** No          **Cosign Required:** Yes
**Telephone/Verbal Order:**   No


Completed by Ellinghuysen, Susan RN,QM on 01/11/2016 13:22
Requested to be cosigned by  Slater, Charles MD.
Cosign documentation will be displayed on the following page.
Requested to be reviewed by  Jordan, Nancy DO.
Review documentation will be displayed on the following page.

# Bureau of Prisons
# Health Services
# Clinical Encounter - Administrative Note

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | ALMEDA, CARLOS JR | | | Reg #: | 36700-180 |
| Date of Birth: | 02/24/1967 | Sex: | M    Race: WHITE | Facility: | RCH |
| Note Date: | 01/11/2016 10:35 | Provider: | Ellinghuysen, Susan RN, | Unit: | OUT |

Admin Note - Community Hospital Report encounter performed at Other.

**Administrative Notes:**

    **ADMINISTRATIVE NOTE   1**    **Provider:** Ellinghuysen, Susan RN,QM

        COMMUNITY HOSPITAL ADMIN NOTE
        FMC ROCHESTER, MN
        DIAGNOSIS: CHF exacerbation/Acute Kidney Injury
        ADMIT DATE: 1/3/2016
        CONTACTED: Sam, RN at local hospital
        HOSPITAL: St. Mary's, Domitilla 4-266, Med/Cardiac ICU, 255-537
        Condition: Stable

        Nurse reports that Lasix drip was discontinued on 1/9/2016.  Torsemide 40/40 was initiated on 1/10/2016.
        Patient had a sleep study last night.  Results not available at this time.  Plan to do right heart catheterization
        today and discharge back following that procedure.  Abnormal labs:  APTT 87; Pro time 19.3 and Creatinine
        3.0.  Nurse was advised that patient is currently scheduled with Dr. Hogan, Nephrology for tomorrow and FMC
        has requested that hospital nurse verify if this appointment is needed or not.  9-3 FAX number provided for
        discharge summary and 9-3 nurse-to-nurse telephone number provided for nurse-to-nurse report just prior to
        discharge.

        PLAN: Discharge back to FMC today following catheterization procedure. PCPT informed

**Copay Required:** No        **Cosign Required:** Yes

**Telephone/Verbal Order:**   No

Completed by Ellinghuysen, Susan RN,QM on 01/11/2016 10:36
Requested to be cosigned by  Slater, Charles MD.
Cosign documentation will be displayed on the following page.
Requested to be reviewed by  Jordan, Nancy DO.
Review documentation will be displayed on the following page.

# Bureau of Prisons
# Health Services
# Clinical Encounter

| | | | |
|---|---|---|---|
| Inmate Name: ALMEDA, CARLOS JR | | | Reg #: 36700-180 |
| Date of Birth: 02/24/1967 | Sex: M | Race: WHITE | Facility: FTW |
| Encounter Date: 02/15/2011 13:12 | Provider: Gomez, Jose MLP | | Unit: Z01 |

Sick Call/Triage encounter performed at Special Housing Unit.

**SUBJECTIVE:**

**COMPLAINT 1**     **Provider:** Gomez, Jose MLP

**Chief Complaint:** Skin Problem

**Subjective:** Ulcer on foot left. 2.) requesting antibiotic ointment for ulcer on foot.
Patient states he has had this ulcer for about 27 months. He states he does the wound care himself. Patient also states he needs wound care supplies.

**Pain Location:**

**Pain Scale:** 0

**Pain Qualities:**

**History of Trauma:**

**Onset:**

**Duration:**

**Exacerbating Factors:**

**Relieving Factors:**

**Comments:**

**OBJECTIVE:**

**Temperature:**

| Date | Time | Fahrenheit | Celsius | Location | Provider |
|---|---|---|---|---|---|
| 02/15/2011 | 13:13 FTW | 96.1 | 35.6 | Oral | Gomez, Jose MLP |

**Pulse:**

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 02/15/2011 | 13:13 FTW | 73 | Via Machine | Regular | Gomez, Jose MLP |

**Respirations:**

| Date | Time | Rate Per Minute | Provider |
|---|---|---|---|
| 02/15/2011 | 13:13 FTW | 18 | Gomez, Jose MLP |

**Blood Pressure:**

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|---|---|---|---|---|---|---|
| 02/15/2011 | 13:13 FTW | 134/69 | Left Arm | Sitting | Adult-regular | Gomez, Jose MLP |

**Height:**

| Date | Time | Inches | Cm | Provider |
|---|---|---|---|---|
| 02/15/2011 | 13:13 FTW | 73.0 | 185.4 | Gomez, Jose MLP |

**Weight:**

| Date | Time | Lbs | Kg | Waist Circum. | Provider |
|---|---|---|---|---|---|
| 02/15/2011 | 13:13 FTW | 253.0 | 114.8 | | Gomez, Jose MLP |

**Exam:**

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name:  ALMEDA, CARLOS JR | | | | Reg #:  36700-180 | |
| Date of Birth:  02/24/1967 | Sex:  M   Race:  WHITE | | | Facility:  FTW | |
| Encounter Date:  02/15/2011 13:12 | Provider:  Gomez, Jose MLP | | | Unit:  Z01 | |

**Exam:**

**Skin**

there is a 1.5x.5 cm healing lesion on lateral aspect of left foot.  Doing well.  Completely closed.  Only very thin tissue over last portion of healing wound.

**ASSESSMENT:**

| Description | ICD9 | Status | Status Date | Progress | Type |
|---|---|---|---|---|---|
| Foot (except toes), open wound, w/o complication | 892.0 | Current | 06/04/2010 | Marked Improvement | Chronic |

**PLAN:**

**Disposition:**

Follow-up at Sick Call as Needed

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 02/15/2011 | Counseling | Compliance - Treatment | Gomez, Jose | Verbalizes Understanding |

careful not to walk too much on that foot.  Keep foot care.

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 02/15/2011 | Counseling | Compliance - Treatment | Gomez, Jose | Verbalizes Understanding |

no antibiotic at this time

**Copay Required:** No          **Cosign Required:**  Yes
**Telephone/Verbal Order:**  No

Completed by Gomez, Jose MLP on 02/15/2011 13:25
Requested to be cosigned by  Tubera, Butch MD, CD.
Cosign documentation will be displayed on the following page.

# Bureau of Prisons
# Health Services
# Clinical Encounter - Administrative Note

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | ALMEDA, CARLOS JR | | | Reg #: | 36700-180 |
| Date of Birth: | 02/24/1967 | Sex: | M    Race: WHITE | Facility: | OKL |
| Note Date: | 04/16/2013 09:40 | Provider: | Petry, G. MD | Unit: | C05 |

Admin Note encounter performed at Housing Unit.
**Administrative Notes:**

**ADMINISTRATIVE NOTE   1**        **Provider:** Petry, G. MD

S/O/A: Pt has hx of b/l foot ulcer/callouses that he states were debrided prior to his transfer. Wounds are located on the plantar surface of instep/forefoot b/l. Wounds are healing well, stage 1 ulcers.

P: Basic wound care at this time see order for detail. Telfa drsg applied, secured with surgical tape.

**Schedule:**

| Activity | Date Scheduled | Scheduled Provider |
|---|---|---|
| Wound Care | 04/17/2013 00:00 | Nurse-FTC |

please give pt telfa & tape for self wc/daily drsg change.

**Copay Required:** No          **Cosign Required:** No
**Telephone/Verbal Order:**   No

Completed by Petry, G. MD on 04/16/2013 09:47

BAPTIST HOSPITALS OF SOUTHEAST TEXAS
BEAUMONT
3080 College St. - Beaumont, TX 77701

Patient Name: ALMEDA, CARLOS          HSSV/RM/BED: MSS/240/A
Admitting Physician: Absar Qureshi, MD   Patient Number: 120247306
Admission Date: 07/16/2013             Visit Number: 2676338
Date of Birth: 02/24/1967             Age/Gender: 46/M

CONSULTATION NOTE

******
DATE OF CONSULTATION:   07/17/2013

CHIEF COMPLAINT
Right foot infection.

HISTORY OF PRESENT ILLNESS
This is a 46-year-old Hispanic inmate that presented to Baptist ER
complaining of right foot infection. The patient states that the wound
has been present for approximately 90 days to the right foot and has been
chronic in nature. The patient has been seen by wound care specialist as
well as the wound care within the prison system. The patient has been
treating with offloading shoes as well as diabetic shoes. The patient
relates that the right 5th toe has turned purple over the last few days.

PAST MEDICAL HISTORY
Diabetes mellitus, peripheral neuropathy, hypertension, chronic anemia,
hyperlipidemia.

PAST SURGICAL HISTORY
Multiple surgeries to the left foot including metatarsal resection as
well as I and Ds due to infection.

SOCIAL HISTORY
The patient denies any type of tobacco, alcohol or drug use.

FAMILY HISTORY
Noncontributory.

PHYSICAL EXAMINATION
GENERAL: No apparent distress. Alert and oriented x3.
VITAL SIGNS: Temperature 101.7, pulse 101, respiratory rate 21. His blood
pressure is 143/71. O2 saturation is 96% on room air.

LOWER EXTREMITY EXAMINATION
INTEGUMENT: There is a large ulceration to the plantar aspect of the
right 5th metatarsal head with surrounding bluish discoloration as well
as serosanguinous drainage within this. There is fluctuance within the
5th metatarsophalangeal joint. Discoloration extends to approximately the
mid shaft portion of the 5th metatarsal. There is surrounding cellulitis
with ascending cellulitis to the level of the thigh. There is streaking
along the thigh.
VASCULAR: DP/PT is +2/4. There is 2+ edema to the right foot. No edema
left foot.
MUSCULOSKELETAL: There is no gross deformity to the right foot. Minimal
pain on palpation. Left foot has multiple metatarsal head resections with
subsequent digital deformity.
NEURO: Sensation is diminished to light touch.

ALMEDA, CARLOS                    120247306        2676338      $$$$$$$$

**DIAGNOSTIC STUDIES**
X-ray, 3 views of right foot, shows findings consistent with
osteomyelitis as well as soft tissue emphysema within the 5th digit.

**ASSESSMENT**
1. Gangrene of the right 5th toe as well as osteomyelitis right foot.
2. Diabetes mellitus with peripheral neuropathy.

**PLAN**
I had a long discussion with the patient today concerning treatment
options. He will need partial 5th ray amputation with application of
wound VAC later today and will be placed n.p.o. for now. He is at risk
for much higher level amputation due to the infection type, and he is
made aware of this. We will need to continue the IV antibiotics including
vancomycin and Zosyn until culture results.

\*\*\*\*\*\*\*\*

_____ Kolby White, DPM

cc  Absar Qureshi, MD
:

DO:  07/17/2013    08:54
TT:  07/17/2013    13:21
/ NI
JOB #:  1327950
Authenticated by Kolby S. White, D.P.M. On 08/18/2013 03:17:56 PM

BAPTIST HOSPITALS OF SOUTHEAST TEXAS
BEAUMONT
3080 College St. - Beaumont, TX 77701

Patient Name: ALMEDA, CARLOS                HSSV/RM/BED: MSS/240/A
Admitting Physician: Absar Qureshi, MD      Patient Number: 120247306
Admission Date: 07/16/2013                  Visit Number: 2676338
Date of Birth: 02/24/1967                   Age/Gender: 46/M

CONSULTATION NOTE

******
DATE OF CONSULTATION:

Thank you, Dr. Qureshi, for allowing me to participate in the care of
this patient.

HISTORY OF PRESENT ILLNESS
This is a 46-year-old inmate who came in for necrotic cellulitis of the
right lower extremity and underwent a right fifth toe I and D and
amputation. Renal consultation obtained for elevated creatinine of 1.9.
This patient was admitted with a creatinine of 1.7. He claims that he is
unaware of any previous history of renal disease. He has history of
insulin-dependent diabetes mellitus, to the best of his knowledge for 12
years with significant peripheral neuropathy. His leg swelling has gotten
worse over the last several weeks. His diabetes is not well controlled at
home. Other past medical history is of hypertension, peripheral
neuropathy, obesity. He has been currently receiving levofloxacin and
vancomycin for infection in the lower extremities with culture results
consistent with E coli and enterococcus. At this point denies any
dysuria, frequency, urgency, oliguria or polyuria. He also has a history
of anemia without any active bleeding at this point.

FAMILY HISTORY
Diabetes.

SOCIAL HISTORY
Currently denies any alcohol abuse or drug abuse. He is an inmate.

REVIEW OF SYSTEMS
Pertinent for leg swelling which has gotten worse. Other than that, the
14-system review is negative.

PHYSICAL EXAMINATION
GENERAL: The patient appears his age.
VITAL SIGNS: Temperature 98.6, heart rate 76, blood pressure 145/68,
respiratory rate 21.
NECK: No JVD.
LUNGS: Lungs sound clear. Normal vesicular breathing.
CARDIOVASCULAR: S1, S2 within normal limits.
ABDOMEN: Soft, nontender. Right upper extremity is slightly more swollen
as compared to the left one. He has a PICC line in the right upper
extremity. A drain from his right toe in the surgical scar site and 3+
pitting edema of his lower extremities.

CLINICAL IMPRESSION
A 46-year-old gentleman with the following identifiable medical problems:
1. Status post amputation of the 5th toe for necrosis with positive
cultures of the bone for enterococcus and Escherichia coli.



ALMEDA, CARLOS                    120247306        2676338        $$$$$$$$

2. Renal failure, which I presume is going to turn out to be chronic kidney disease stage III. The lower extremity edema is likely from proteinuria and nephrosis. However, further evaluation necessary.
3. Hypertension is under fair control.
4. Anemia is modest at this point and may be multifactorial from iron deficiency plus chronic kidney disease.

PLAN
Further evaluation and dosage adjustments are to be done as follows. Initial renal serologies inclusive of ANA, hepatitis profile, HIV, phosphorous and intact PTH. Check 24-hour urine for creatinine clearance and total proteins. Check vitamin D level. Keep vancomycin trough level between 15 and 20. Decrease Levaquin to 250. Decrease Lovenox to 30 mg subcutaneous per day. Decrease gabapentin 300 mg at bedtime. Discontinue metformin. Carefully diurese the patient with Lasix at 40 mg IV q.12h. Obtain renal ultrasound. Rule out secondary hyperparathyroidism and hyperphosphatemia. Rule out CKD, mineral and bone disease. Further recommendations to follow.


********

_____ Shariq Ahmad, MD

cc  Absar Qureshi, MD
:


DD:  08/23/2013    12:54
TT:  08/23/2013    19:07
SA / EMC
JOB #:  1348745
Authenticated by Shariq Ahmad, M.D. On 08/27/2013 03:01:48 PM


ALMEDA, CARLOS                     120247306        2676338      $$$$$$$$

# Bureau of Prisons
## Health Services
## Clinical Encounter

| | | | |
|---|---|---|---|
| Inmate Name: ALMEDA, CARLOS JR | | Reg #: | 36700-180 |
| Date of Birth: 02/24/1967 | Sex: M Race: WHITE | Facility: | RCH |
| Encounter Date: 02/26/2014 14:50 | Provider: Elker, Kevin APRN | Unit: | C02 |

Wound Care encounter performed at Health Services.

**SUBJECTIVE:**

**COMPLAINT 1**      **Provider:** Elker, Kevin APRN

**Chief Complaint:** Open Wound(s)

**Subjective:** Received a request from primary medical team to evaluate this patient's foot ulcer. He is well known to me from his prior stay. He returned to FMC Rochester yesterday. CDR Witter, PA saw him yesterday and reports removing an occlusive dressing from the right foot ulcer and that the skin around the ulcer was macerated.

Patient was examined in his room along with Dr. Paulson and CDR Witter, PA. Inmate Health Summary reviewed to refamiliarize myself with his health conditions and medications.

Patient denies experiencing any pain in either foot.

**Pain Location:**
**Pain Scale:**
**Pain Qualities:**
**History of Trauma:**
**Onset:**
**Duration:**
**Exacerbating Factors:**
**Relieving Factors:**
**Comments:**

**OBJECTIVE:**

**Exam:**

**General**

**Affect**

Yes: Pleasant, Cooperative

**Appearance**

Yes: Alert and Oriented x 3

**Skin**

**Wound**

Yes: Wounds present

Patient was observed walking in the hallway this morning. I reintroduced myself and counseled him about walking. He stated, "I know Mr. Elker, but it is only a little bit. He returned to his wheelchair after this."

Lower extremity brief vascular and foot examination:
Left: palpable strong dorsalis pedis and post tibial pulses. Capillary refill 3 seconds. Toes warm and pink. No hair growth noted below the knee. Edema in lower leg and foot. Calf circumference is 39 cm and ankle circumference is 25 cm. Faint discoloration on the lower legs consistent with hemosiderin staining. Noted one visible varicosity about 3-4 inches below the knee on the medial-anterior portion of the leg. Significant foot deformity of the left foot with pronounced metatarsal heads. Significant palpable callous build-up under the second and 5th metatarsal heads. The 5th has a small area of dark, circular discoloration. See photographs in BEMR.

# Bureau of Prisons
## Health Services
## Clinical Encounter - Administrative Note

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | ALMEDA, CARLOS JR | | | Reg #: | 36700-180 |
| Date of Birth: | 02/24/1967 | Sex: | M    Race: WHITE | Facility: | SEA |
| Note Date: | 02/06/2014 12:33 | Provider: | Capps, J. MD | Unit: | J01 |

Community Hospital Report encounter performed at Health Services.
**Administrative Notes:**

**ADMINISTRATIVE NOTE   1**        Provider: Capps, J. MD

VIBRA  LTACH FACILITY  REPORT

PHYSICIAN REPORT THIS DATE  ON  THIS PT
IS  THAT PT :

1)  REMAINS ON IV ANTIBIOTICS
2)  IS RECOVERING FROM ATN  (ACUTE RENAL FAILURE)  RELATED  TO
VANCOMYCIN  (ANTIBIOTIC  REQUIRED FOR TREATMENT OF INFECTION
3)  IS IN RECOVERY FROM  ACUTE PULMONARY EDEMA
4)  IS  TO BE FURTHER ASSESSED IN 1 WEEK  AS  TO LEVEL OF RECOVERY
AND
LEVEL OF  CARE LIKELY NEEDED  AT  DISCHARGE

**Copay Required:** No              **Cosign Required:** No
**Telephone/Verbal Order:**  No


Completed by Capps, J. MD on 02/06/2014 12:36

# Bureau of Prisons
# Health Services
# Clinical Encounter

| | | | |
|---|---|---|---|
| Inmate Name: ALMEDA, CARLOS JR | | Reg #: 36700-180 | |
| Date of Birth: 02/24/1967 | Sex: M   Race: WHITE | Facility: RCH | |
| Encounter Date: 04/16/2014 14:30 | Provider: Witter, Lee PA-C | Unit: C02 | |

Pre-operative Evaluation/Counseling encounter performed at Health Services.

**SUBJECTIVE:**

**COMPLAINT 1    Provider:** Witter, Lee PA-C

**Chief Complaint:** Pre-operative Eval

**Subjective:** Mr Almeda is a 47 yo inmate who transferred back to FMC Rochester on 2/25/14. He left FMC 12/04/13 to transfer to FCI Seagoville. He was transferred to the ED at Doctors Hospital at White Rock Lake on 12/23/13 for RLE cellulitis. He was treated with IV Zosyn for cellulitis but also found to have a DVT in the distal right superficial femoral vein. He was started on Lovenox and transitioned to warfarin. He was also started on IV antibiotics for chronic osteomyelitis and transferred to Vibra Specialty Hospital in DeSoto, TX on 12/31/13 for continued IV antibiotics. . He was stabilized and transferred back to FCI Seagoville on 2/13/14 on metoprolol, Lasix, amlodipine, warfarin and hydralazine. He was seen on 2/20/14 and started on IV ceftriaxone and Cipro in addition to Bactrim for concern for LLE cellulitis. Since his return FMC he has been followed by Nephrology for Nephrotic range proteinuria and HTN. He was hospitalized in March 2014 for acute kidney injury in this setting. He is pending kidney biopsy. He was also evaluated by the Cardiac Valve clinic for tricuspid regurgitation. There was a tethered component to part of valve. The Valve Clinic recommended follow up in one year. Anticoagulation was stopped pending kidney biopsy and planned orthopedic procedure.

**Pain Location:**
**Pain Scale:** 0
**Pain Qualities:**
**History of Trauma:**
**Onset:**
**Duration:**
**Exacerbating Factors:**
**Relieving Factors:**
**Comments:**

**OBJECTIVE:**
**Temperature:**

| Date | Time | | Fahrenheit | Celsius | Location | Provider |
|---|---|---|---|---|---|---|
| 04/16/2014 | 05:33 | RCH | 97.2 | 36.2 | Oral | Stork, Brittany NA |

**Pulse:**

| Date | Time | | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|---|
| 04/16/2014 | 05:33 | RCH | 66 | Via Machine | | Stork, Brittany NA |

**Respirations:**

| Date | Time | | Rate Per Minute | Provider |
|---|---|---|---|---|
| 04/16/2014 | 05:33 | RCH | 16 | Stork, Brittany NA |

**Blood Pressure:**

| Date | Time | | Value | Location | Position | Cuff Size | Provider |
|---|---|---|---|---|---|---|---|
| 04/16/2014 | 05:33 | RCH | 169/71 | Left Arm | Lying | Adult-regular | Stork, Brittany NA |

**SaO2:**

| Date | Time | Value(%) | Air | Provider |
|---|---|---|---|---|

36700-180

Report ID:RENAL PATHOLOGY REPORTS
Terminal ID : W073065   Run Date/Time: 28May2014  10:56am
Reporting period = 20May2014 thru 21May2014  Requested by: MRC8269

Age in years       : 47          Date of Birth    : 1967-02-24       Gender        : M
Location           : Not Avail

RENAL PATHOLOGY

Renal Pathology Reports;

**05/21/2014** Renal Biopsy (KR14-2473)

Requested By:  **Marie C. Hogan, M.D., Ph.D  8-9377**

**DIAGNOSIS:**
      Kidney, needle biopsy:  1) Diffuse and nodular diabetic
glomerulosclerosis, advanced, with moderately extensive tubular
atrophy and interstitial fibrosis.  2) Interstitial nephritis.

      Electron microscopy will be reported as an addendum.

**DIAGNOSIS COMMENT:**
      The biopsy is adequate for interpretation.
      This renal biopsy shows features of diabetic nodular
glomerulosclerosis that is associated with moderately extensive
tubular atrophy and interstitial fibrosis.  In addition, there is
also moderate patchy interstitial inflammation present.  The
interstitial nephritis may be secondary to a hypersensitivity
reaction to drugs such as NSAIDs, antibiotics, etc.  There is no
evidence of an immune complex-mediated glomerulonephritis.
      This is a 47-year-old man with progressive renal dysfunction,
diabetes, nephrotic syndrome, and chronic ulcer on the fourth MTP
joint, ? osteomyelitis.  Patient recently received antibiotics.
Positive MPO titers.  Serum creatinine 2.4 mg/dL.

5/22/2014 14:32 Interpreted by: Sanjeev Sethi, M.D., Ph.D. 8-9398
Report electronically signed by Sanjeev Sethi, M.D., Ph.D.
Transcribed by: deo 5/22/2014 12:21:53
SPECIMEN DESCRIPTION:
A:Renal Needle Biopsy

**TISSUE DESCRIPTION:**
      LM: Received in 10% neutral buffered formalin for light
microscopy are two pieces of tissue measuring 1.6 x 0.04 cm (cut
into two pieces) and 2.0 x 0.04 cm (cut into three pieces).  (Two
pieces, both measuring 0.2 x 0.04 cm, were taken and processed for
electron microscopy).  (TW)
      EM: Received for electron microscopy are two pieces of tissue,
both measuring 0.2 x 0.04 cm (received in formalin).  (TW)
      IF: Received in Zeus for immunofluorescent histology is one
piece of tissue measuring 1.3 x 0.04 cm.  (WFL)

**MATERIAL RECEIVED:**
1 - 10% formalin wet tissue
1 - Zeus wet tissue

**SLIDE DISPOSITION:**

**MICROSCOPIC DESCRIPTION:**
      LIGHT MICROSCOPY: Tissue sections are stained with H&E, PAS,
Masson trichrome and Jones methenamine silver to aid in the
morphological interpretation.  The sample submitted for light
microscopy contains five cores.  They contain renal cortex and
medulla.  There are up to 17 glomeruli present.  None of the
glomeruli are globally sclerosed.  The glomeruli show marked
mesangial expansion with increase in mesangial matrix, resulting in
the formation of PAS- and silver-positive mesangial nodules.  The
nodules are features of Kimmelstiel-Wilson nodules.  Small
microaneurysm formation is noted.  The glomerular basement membranes
are thickened.  Protein reabsorption granules are noted in some of
the podocytes.  There is no evidence of crescent formation,
fibrinoid necrosis, thrombosis, or endocapillary proliferation.
      Tubules and interstitium:  There is prominent interstitial
inflammation present in one core (the core contains mostly medulla),

RCH/Reviewed

MAY 3 0 2014

Garrick Olsen, PA-C

RCH/Reviewed

MAY 3 0 2014

Margaret Paulson, DO

2014 MAY 30   PM 11:11

2014 MAY 29   PM 2:13   9/3

# Bureau of Prisons
# Health Services
# Clinical Encounter - Administrative Note

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | ALMEDA, CARLOS JR | | | Reg #: | 36700-180 |
| Date of Birth: | 02/24/1967 | Sex: | M      Race: WHITE | Facility: | RCH |
| Note Date: | 06/29/2015 12:59 | Provider: | Marks, Melissa RN | Unit: | OUT |

Admin Note - Community Hospital Report encounter performed at Other.
**Administrative Notes:**

**ADMINISTRATIVE NOTE   1**          **Provider:** Marks, Melissa RN

COMMUNITY HOSPITAL ADMIN NOTE
FMC ROCHESTER, MN
DIAGNOSIS: Chest Pain
ADMIT DATE: 6/28/2015
CONTACTED: Scott, RN at local hospital
HOSPITAL:  SMH, Francis 5-127, Thoracic Surgery, 255-4715
Condition: Stable

Nurse reports that they are switching his cardiac meds to control his BP. He states that the cardiac work up that they completed all came back negative for anything. Troponin is flat 0.02, ECG normal. He did receive 1 unit of blood today due to hemoglobin of 6.8, plan to recheck this afternoon. There is no noted source of bleeding. Patient continues to complain of 2/10 pain in his chest, there was no PE noted. They will be completing renal ultrasound today. Patient had a bowel movement this morning and has great bowel sounds. Vital signs: 98.7, 103/68, 50, 18, 99% RA.

PLAN: Nurse believes patient will return tomorrow.   PCPT informed

**Copay Required:** No          **Cosign Required:** Yes
**Telephone/Verbal Order:**   No

Completed by Marks, Melissa RN on 06/29/2015 13:01
Requested to be cosigned by  Jordan, Nancy DO.
Cosign documentation will be displayed on the following page.
Requested to be reviewed by  Hadaway, Sheila D.O./CD.
Review documentation will be displayed on the following page.

# Bureau of Prisons
## Health Services
### Clinical Encounter - Administrative Note

| | | | | |
|---|---|---|---|---|
| Inmate Name: | ALMEDA, CARLOS JR | | Reg #: | 36700-180 |
| Date of Birth: | 02/24/1967 | Sex:     M     Race:WHITE | Facility: | RCH |
| Note Date: | 06/30/2015 14:11 | Provider:   Marks, Melissa RN | Unit: | OUT |

Admin Note - Community Hospital Report encounter performed at Other.
**Administrative Notes:**

**ADMINISTRATIVE NOTE   1**          **Provider:**  Marks, Melissa RN

COMMUNITY HOSPITAL ADMIN NOTE
FMC ROCHESTER, MN
DIAGNOSIS: Chest Pain
ADMIT DATE: 6/28/2015
CONTACTED: Scott, RN at local hospital
HOSPITAL:  SMH, Francis 5-127, Thoracic Surgery, 255-4715
Condition: Stable

Per Mayo Notes: Renal ultrasound was negative for stenosis. Lung scan was indicative of multifocal PE some of which may be recanalizing. Ultrasound of lower extremities was negative for DVT. ECG was normal. He has tricuspid valve regurgitation which has gotten worse over time however does not require any urgent treatment now. Labs are below.

| | | 6/30 | 6/29 | 6/28 |
|---|---|---|---|---|
| Hemoglobin | | 7.6 | 6.7 | 7.8 |
| K+ | | 5.1 | 5.3 | 5.2 |
| Creatinine | | 3.1 | 2.8 | 2.1 |
| BUN | | 46 | 41 | 37 |
| Bicarb | 17 | 15 | 14 | |

Per nurse patient is doing well. She states that he is on a heparin infusion and they are treating the wound on his back with antibiotics. He denies pain and is eating well. He had a bowel movement yesterday and has bowel sounds. They are going to be rechecking hemoglobin this afternoon due to his transfusion yesterday. Nephrology is going to see him today and they are completing 24 hour urine due to poor kidney function. He is up and independent, alert and oriented. Vital signs: 98.4, 156/56, 59, 16, 96% RA.

PLAN: No plans for discharge at this time.   PCPT informed

**Copay Required:** No          **Cosign Required:**  Yes
**Telephone/Verbal Order:**  No

Completed by Marks, Melissa RN on 06/30/2015 14:13
Requested to be cosigned by  Jordan, Nancy DO.
Cosign documentation will be displayed on the following page.
Requested to be reviewed by  Hadaway, Sheila D.O./CD.
Review documentation will be displayed on the following page.


**MAYO CLINIC** Online Services for
Referring Physicians

| | |
|---|---|
| **Full Name:** | Almeda, Carlos |
| **Mayo Clinic Number:** | 7-411-817 |
| **Birth Date:** | 02/24/1967    (Age 48) |
| **Gender:** | Male |

---

## Clinical Notes

Nephrology &        2/11/2016 9:50 AM
Hypertension
Consult

---

## DEMOGRAPHIC INFORMATION
  Clinic Number: 7-411-817
Patient Name: Mr. Carlos Almeda, Jr.
Age: 48 Y
Birthdate: 24-Feb-1967  Sex: M
Address: Federal Medical Center, 36700-180, P.O. Box 4600  City: Rochester, MN 55903-4600

Service Date/Time: 11-Feb-2016 09:50
Provider: Marie C. Hogan, MD, PhD  Pager: 8-9377
Service: NEPHT  Type/Desc: CON  Status: Fnl  Revision #: 2

## HISTORY OF PRESENT ILLNESS
  Mr. Almeda returns following a recent hospitalization to the Cardiology Heart Failure Service in January, from the 3rd to the 11th, 2016, with acute on chronic diastolic heart failure, moderate bradycardia and hypotension, with worsening acute renal failure, likely caused by acute tubular injury in the setting of low blood pressure. He was volume overloaded and hypokalemic. There was concern he might need dialysis; however, the situation was averted, but he did require one session of 2-1/2 hours of diafiltration. His dismissal serum creatinine was 3.0. Since then, he states his weight has gone from 238 pounds up to 250 and is now about 244.8. His blood pressures he states he notices that they have been higher, approximately 160s at the prison. His current dose of torsemide is 40 in the morning and 20 in the afternoon, but this was increased during the hospitalization to 40 mg b.i.d. He is having labs once a week.

## CURRENT MEDICATIONS
  acetaminophen [TYLENOL] 325 mg tablet 2 tablets by mouth three times a day as needed.
  Indication, Site, and Additional Prescription Instructions:
    pain

amlodipine 5 mg tablet 1-2 tablets by mouth as directed by prescriber.
  Indication, Site, and Additional Prescription Instructions:
    10 mg in the AM and 5 mg in the PM

aspirin 81 mg chewable tablet 1 tablet by mouth one time daily.

atorvastatin [LIPITOR] 10 mg tablet 1 tablet by mouth every bedtime.

carvedilol [COREG] 6.25 mg tablet 1 tablet by mouth two times a day.

---



**MAYO CLINIC** Online Services for Referring Physicians

| | | |
|---|---|---|
| Full Name: | Almeda, Carlos | *36700 - 180*     FMC Rochester, MN |
| Mayo Clinic Number: | 7-411-817 | |
| Birth Date: | 02/24/1967   (Age 48) | |
| Gender: | Male | |

Extremities: He has 2+ edema to thighs.

## IMPRESSION/REPORT/PLAN

*#1 Chronic kidney disease, stage 4*
*#2 Progressing chronic kidney disease, with estimated GFR currently 22, consistent with stage 4 chronic kidney disease*
*#3 Diabetes mellitus*
*#4 Recent acute renal failure, improved now but did require ultrafiltration support*

## RECOMMENDATIONS

Mr. Almeda is a 48-year-old Hispanic gentleman with evidence on recent right heart cath of normal cardiac output, but he has known severe tricuspid regurgitation and thought to have pulmonary hypertension, although pulmonary pressures at that evaluation were said to be normal. His pulmonary hypertension is multifactorial. At this point, with a GFR of 22, he may be eligible for a kidney transplant evaluation. If this is not feasible, I would like to proceed ahead possibly with development of a permanent dialysis access in the form of an arteriovenous fistula. Subsequently, on February 17, 2016, Mr. Almeda has had recheck kidney function labs, a monoclonal protein study, and serum. Once I hear back from our transplant colleagues, we will decide on whether to go ahead with a permanent vascular access placement toward preparations for long-term dialysis. I will discuss further with Dr. Slater, also at the prison medical services. At the moment, Mr. Almeda is not receiving an ACE inhibitor. He has been on and off this medication for a number of years now, and it has been difficult to maintain the therapy for him due to his tenuous renal function.
Original: mch revised by ccj
Electronically Signed: 23-Feb-2016 00:35 by M.C. Hogan, MD, PhD

Last Updated:
Status:      Final



7012 3050 0000 6735 1008

CLERK, OFFICE OF THE U.S. DISTRICT COURT
501 W. Tenth St. Rm 310
Fort Worth, Tx 76102



RECEIVED
SEP 30 2019
2:35 KS
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

Carlos Almeida, II,
#36700-180  JA
Federal Medical Center, Devens
P.O. Box 879
Ayer, MA 01432

Legal-Mail